## ELECTION TO TAKE UNDER A WILL.

Common Pleas Court of Hamilton County.

JEROME D. CREED, ADMINISTRATOR OF SALLIE J. McCALL, v. ISAAC BATES, ADMINISTRATOR OF WILLIAM A. McCALL, ET AL.

Decided, November 22, 1912.

*Wills—What Constitutes an Election to Take—Hesitancy to be Expected Before an Irrevocable Election is Made—Probative Force of a Course of Conduct Consistent with an Intention to Take.*

In the absence of any statutory election on the part of the decedent to take under the will of his wife, whose death occurred some months prior to his own, and the facts presented not being of such a marked character or of such long duration as to distinctly evince an intention to take under her will, or to operate as an equitable bar to dower or distributive rights, it is manifest that there was no election—actual, implied or constructive—to take under said will, but on the contrary the decedent retained his dower and distributive rights.

*Jerome D. Creed* and *Healy, Ferris & McAvoy*, for Mary A. McCall and Isaac Bates, Administrator.

*William Worthington, Willis M. Kemper* and *Robert S. Fulton*, contra.

HUNT, J.

This is an action brought by the administrator with the will annexed of Sallie J. McCall against Isaac Bates, administrator of William A. McCall, and other persons interested in both of said estates, to obtain the direction of the court in the distribution of the estate of Sallie J. McCall. The controversy is between some of the beneficiaries under the will of Sallie J. McCall and Mary A. McCall, the second wife and the surviving widow of William A. McCall. The question involved in the case is whether in the absence of any statutory election by William A. McCall to take under the will of his wife, his acts constituted such an election as to bar his dower and distributive rights.

Sallie J. McCall died March 5, 1909, without issue, leaving her husband, William A. McCall, then about seventy-five years old.

She left an estate consisting of stocks, bonds, money and other personal property amounting to about $260,000 and four pieces of real estate valued on the tax duplicate at about $115,000, to-wit, the Fourth street property, $78,280; the Andover building, Plum and Longworth, $23,260, the homestead in Avondale, $10,500, and the Clinton Street property, $1,880. The Andover building andd Fourth street property produce substantial rentals. She left a lengthy will executed February 26, 1901, and two codicils executed respectively on November 28, 1904, and August 12, 1907, consisting in all of some twenty-six items, in which she made bequests of specific personal property in substantial amounts to relatives and to charitable and historical associations. She devised the Andover building to Jacob Schmidlapp and certain others in trust for a proposed colored industrial school to be incorporated by the said trustees; the Clinton street property to the Ohio Society for the Prevention of Cruelty to Children and Animals; and devised a life estate in the Fourth street property and the fee of the homestead property, "together with all the furniture and household belongings therein" not otherwise specifically bequeathed, to her husband, William A. McCall. The Fourth street property, subject to the life estate of William A. McCall, was devised to the trustees of the proposed colored industrial school. There was also a residuary clause as to the personal property in favor of the colored industrial school. There was no residuary clause as to real property, nor any provision in case the husband did not take under the will.

The husband was made executor under the will and codicils probated March 25, 1909, and due notice of his appointment was given. An inventory and appraisement of personal property was duly made and filed by such executor on April 24, 1909. All or practically all debts except administration expenses were paid. No citation was ever issued to William A. McCall as widower requiring him to elect, and no statutory election was made by him. He married again on September 5, 1909, and died on September 9, 1909, leaving his widow, Mary A. McCall; surviving him. J. D. Creed was thereafter appointed administrator with the will annexed of Sallie J. McCall. William A. McCall left no will, and Isaac Bates was appointed as his ad-

ministrator, and as such filed an account of William A. McCall, as executor of Sallie J. McCall, in which an account was rendered of all personal property received by W. A. McCall as executor as well as of all rents and disbursements pertaining to the real estate of which W. A. McCall had assumed charge. The personal property was practically at that time in the same form as when the first Mrs. McCall died, increased however by the dividends and interest thereon. Such stocks and bonds had been kept in a safety deposit box by Sallie J. McCall, and William A. McCall continued so to keep them, simply changing the name in which the box was kept to "Estate of Sallie J. McCall:" Mr. McCall was himself a man of ample means and, independent of any interest in his wife's estate, left an estate of over $100,000 in personal property.

William A. McCall never asserted an interest in the Andover building adverse to the devise by his wife of such building for the purpose of the colored industrial school. On the contrary, after Mr. Schmidlapp, one of the trustees to whom such property had been devised, had asked Mr. Stark, of the Union Savings Bank & Trust Company, to take charge of the property and to consult Mr. McCall pertaining thereto, Mr. McCall by information as to tenants and delivery of insurance policies, assisted him in assuming control of such property. When it was deemed advisable for such trustees to incorporate for the purpose of such colored industrial school, Mr. McCall consented to act as one of the directors of such corporation, although he only attended one meeting after qualifying. To such corporation Mr. Schmidlapp and the other trustees named in the will as trustees for such colored industrial school conveyed the Andover building, the Fourth street property and all interest of said trustees in the personal property of Sallie J. McCall, reciting in said deed the provisions of the will of Sallie J. McCall pertaining thereto. There is no evidence that William A. McCall was in any way a party to the making of such deed, although he probably knew of its execution. The Clinton street property, devised to the Society for the Prevention of Cruelty to Children and Animals, produced little revenue, and Mr. McCall permitted the society to take charge of the property at once. The society

owned the adjoining lot by reason of a devise by one of Mrs. McCall's relatives. The society desired to sell both, and at the request of Mr. Victor Trounstine, the secretary and treasurer of such society, Mr. McCall was induced to sign a quit-claim deed; of the property devised by his wife, to a purchaser who had declined to buy without such quit-claim. Mr. Trounstine testified that although Mr. McCall in July finally agreed to sign such deed, he stated at the time that there were reasons why he could not take under the will of his wife, but that he would take care of the matter of the Clinton street property for the society. He thereafter signed a deed when prepared for him. Of the proceeds Mr. Trounstine set apart $1,250 to await developments. He so kept such sum until Mr. McCall died. It does not appear that he did this by reason of any request or condition made by Mr. McCall.

Immediately upon the death of Sallie J. McCall, W. A. McCall opened an account as executor in the First National Bank, in which bank he had and continued to have another account in his own name. In his account as executor Mr. McCall deposited the dividends and interest from the stocks and bonds of his wife's estate. From this account $7,500 was transferred to an interest bearing account in the Union Savings Bank & Trust Company, opened on August 7, 1909, in the name of "Estate of Sallie J. McCall." Such account, undisturbed by withdrawals on deposits, existed when he died. In the First National Bank $387.25 was to his credit as executor when he died.

The Fourth street property devised to William A. McCall for life was under rental to the May Brothers, under the name of "The Peerless," for $416.67 per month. When the April rent became due, the first rent after the death of Sallie J. McCall, William A. McCall notified the May Brothers that he would thereafter collect the rent, stating that he was executor. The May Brothers gave him a check for $416.67 payable to William A. McCall, insisting however, upon the production of his letters and upon his giving a receipt signed by William A. McCall, executor. They so continued to pay the rent until Mr. McCall died. These checks were deposited by Mr. McCall with other deposits in the First National Bank to the credit of his personal

account. When Mr. McCall died he had a credit in such personal account of over $8,500.

The insurance on the Fourth street property and on the homestead in Avondale was in the Cincinnati Equitable Insurance Company. Mr. McCall informed the agent that he had a life estate in the Fourth street property and asked that it be protected. It was done upon the agent's suggestion by making a memorandum of such fact upon the policy and providing that loss, if any, be payable to him as his interest would appear. The same memorandum was put on the policy of the homestead property, but the reason therefor does not appear.

After the death of Sallie J. McCall, William A. McCall continued to live in and maintain the homested property as his home in practically the same condition as to furnishings as when his wife died. That was the condition when he died. William. A. Strunk, who, as legal counsel, advised Mr. McCall in the settlement of his wife's estate, advised Mr. McCall as to his rights as widower and as devisee. He advised him not to make his election at once, but afterwards frequently urged him to make such election so that the estate could be settled. Mr. McCall, however, up to the last time he saw Mr. Strunk, some ten days before his death, when he informed Mr. Strunk of his contemplated marriage, had expressed no intention of electing to take under the will. At some such interview with Mr. Strunk Mr. McCall, in reply to Mr. Strunk's requests to act, had said, "You say I have a year to elect." At the last interview he said he would let the matter go over until he returned from Massachusetts. By other witnesses evidence has been given of other statements of Mr. McCall, but such statements do not show that he had determined or intended to elect to take under the will. Such expressions are in substance simply expression of his appreciation of the interest of his wife in the uplifting of the colored race, of his sense of obligation to follow his wife's wishes in that regard, or that he believed his wife had not treated him fairly and had done too much for her favorite charity.

It is manifest, if not conceded, that by reason of the large amount of personal estate, the value of Mr. McCall's legal rights as widower in his wife's estate was considerably in excess of the

value of his rights under the will. Figured according to ordinary dower and life tables such excess would be about $60,000. Therefore as a matter of mere pecuniary consideration it was to Mr. McCall's interest not to take under the will.

The sections of the statute particularly applicable to this case are Sections 5963 and 5964, Revised Statutes, now General Code 10566 to 10572.

Section 5963, R. S. "If any provision be made for a widow or widower in the will of the deceased consort, the probate court shall, forthwith, after the probate of such will, issue a citation to such widow or widower to appear and elect whether to take such provision or to be endowed of the lands of the deceased consort and take the distributive shares of the personal estate; and such election shall be made within one year from the date of the service of the citation aforesaid; provided, that such widow or widower may, at any time before the period of such election has expired, file her petition in the court of common pleas for the proper county, making all persons interested in said will defendants to such petition, asking a construction of the provisions of said will in her or his favor, and to have the advice of said court, or of the proper appellate court on appeal thereon; and if proceedings for such advice, or proceedings to contest the validity of such will be commenced within such year, the widow or widower shall be entitled to make election within three months after such proceedings shall have been finally disposed of, and said will shall not have been set aside; but the widow or widower shall not be entitled to both dower and the provisions of the will in her or his favor, unless it plainly appears by the will to have been the intention that the widow or widower should have such provision in addition to the dower and such distributive share."

Section 5964. "The election of the widow or widower to take under the will shall be made in person, in the probate court of the proper county, except as hereinafter provided; and on the application by a widow or widower to take under the will, it shall be the duty of the court to explain the provisions of the will, the rights under it, and by law in the event of a refusal to take under the will. The election of the widow or widower to take under the will shall be entered upon the minutes of the court; and if the widow or widower shall fail to make such election, the widow or widower shall retain the dower, and such share of the personal estate of the deceased consort as the widow or widower would be entitled to by law in case the deceased consort had died intestate, leaving children. If the widow or widower elect

to take under the will, the widow or widower shall be barred of dower and such share, and take under the will alone, unless as provided in the next preceding section; but such election by the widow or widower to take under the will shall not bar the right to remain in the mansion of the deceased consort, or the widow to receive one year's allowance for the support of herself and children, as provided by law, unless the will shall expressly otherwise direct.''

So far as brought to the court's attention the only other states having similar provisions are Kansas and Iowa. An examination of the statutes of Massachusetts, New York, New Jersey, Pennsylvania, Indiana and Illinois, from which states cases have been cited, provide in substance that unless the provisions in a will are in addition to dower and distributive rights, an election is necessary if dower and distributive rights are to be retained. This is the reverse of the Ohio, Kansas and Iowa law. The cases cited from either class of states are, however, applicable to the question of what constitutes an election, if it were necessary to go beyond our own state to ascertain the principles applicable thereto. Except for what is stated in the case of *Jennings* v. *Jennings*, 21 Ohio St., 56-65, it might be said in both classes of states, that the estate given by the will and that given by law vests as of the date of the testator's death, one of the two estates being subject to divestment upon the election to take the other, unless clearly given in addition to the other. Except as otherwise provided by statute, the provision in a will for the benefit of a widow are in addition to dower rights, unless inconsistent therewith or clearly in lieu thereof, and while the history of the statutory provisions, changing such rule is interesting, it is not of sufficient relevancy to the present case to go into such history. In Ohio, at least, since the statute of March 23, 1840 (38 v. 126, Sections 45 and 46), the statutory law has been substantially the same as now found in Sections 5963 and 5964, Revised Statutes. These require a statutory election and provide as a statutory consequence of a failure to so elect, the retention of her dower and distributive rights. The statute does not affect her dower and distributive rights if the provisions of the will are plainly in addition thereto. These statutory provisions have

been construed by our courts in Ohio many times, and it is now settled since the case of *Thompson* v. *Hoop*, 6 Ohio St., 481-485, that there may be an election other than the statutory election, notwithstanding the *contra* syllabus and *dicta* in *Stilley* v. *Folger*, 14 Ohio, 610, and such has been the rule approved in *Stockton* v. *Wooley*, 20 Ohio St., 184; *Millikin* v. *Welliver*, 37 Ohio St., 460; *Mellinger* v. *Mellinger*, 73 Ohio St., 221.

Such rule is, however, expressly conditioned in *Millikin* v. *Welliver*, *supra*, page 466, and *Mellinger* v. *Mellinger*, *supra*, page 229, in neither of which cases did the court find that there was an election as follows:

"In order that acts of a widow shall be regarded as equivalent to an election to waive dower, it is essential that she act with a full knowledge of all the circumstances and of her rights, and it must appear that she intended by her acts to elect to take the provision which the will gave her. These acts must be plain and unequivocal, and be done with a full knowledge of her rights and the condition of the estate. A mere acquiescence without a deliberate and intelligent choice will not be an election. * * * It is believed no case can be found where the facts are held sufficient to amount to an election to waive the widow's rights under the law, unless they are of such a marked character and of such long duration as will clearly and distinctly evince a purpose to take the provisions of the will and to operate as an effectual equitable bar to dower."

In an examination of many cases from various states, including Ohio, wherein the failure to elect in some statutory form arbitrarily bars a specified one of the two inconsistent estates, and where an election other than in the statutory form is held effective, it was generally found that the circumstances were such as would create an estoppel, although estoppel was not always expressly given as a reason therefor.

In *Thompson* v. *Hoop, supra,* 485, and *Stockton* v. *Wooley, supra,* 184, the court found that there was an estoppel to any claim for dower and distributive rights. The case of *Baxter* v. *Bowyer,* 19 Ohio St., 490, is usually cited in connection with the question at issue, but an examination of that case will show, page 501, that, although the court found that the widow had

accepted and enjoyed the provision made for her by the will, it was expressly stated that it was not by reason of that fact alone that the widow was held to have taken under the will. In *Hawkins* v. *Barrow*, 15 C. C., 141, the court found that there had been no election, but that, nevertheless, the widow was entitled to the provisions of the will.

In *Baxter* v. *Bowyer, supra,* and *Hawkins* v. *Barrow,* the provisions of the will included dower, and therefore were in addition to dower. In both cases that fact was one of the determining factors of the case. The widow was therefore entitled to the benefits of both the provisions of the will and her dower rights, and the statute, so far as non-election was a bar to either, was inapplicable. The statute is not always applicable regardless of conditions. The presumption, bar or estoppel raised by the statutory sections can not be extended beyond their terms. *Bowen* v. *Bowen,* 34 Ohio St., 164, and *Carder* v. *Board of County Commissioners,* 16 Ohio St., 354-365.

In the case at bar the provisions of the will are not inclusive of dower and distributive rights. They are admittedly inconsistent therewith. An election was therefore necessary to bar dower and distributive rights. There was no statutory election. Was there an election actually, impliedly or constructively under the above authorities?

There is no question but that Mr. McCall knew what his rights were and fully understood the condition of the estate. That very knowledge including his knowledge of the greater value of his dower and distributive share, over his share under the will, in connection with his appreciation of his wife's charities, would naturally cause hestitation and indecision. It is admitted that his acts with regard to the Andover building, the homestead and the Clinton street property were not in themselves evidence of an intention to take under the will, although consistent therewith, nor where such acts of such a character as to estop him from claiming his dower or rights in any other property than the Andover building and the Clinton street property. As to the homestead he was entitled to remain therein for a year. His appreciation of his wife's charities and his desire in a general way to carry out her intentions, in connection with his own

ample estate was sufficient to have caused him to be willing to waive his dower rights in the Andover building and the Clinton street property. The fact that he gave a quit-claim deed to the Clinton street property instead of making a formal election to take under the will, if anything, shows that he intended no relinquishment of any dower or distributive rights in other properties. His management of the personal property is not claimed to evince any intention on his part to take under the will. The time for distribution under the will or otherwise had not arrived. He kept such property intact and in condition for either event. There is no evidence of any statements of any definite intention or purpose, and even if he had made such statement, so long as it was not accompanied by acts or circumstances creating a legal or equitable estoppel, he would have the right to change his mind and intention until expressed under statutory conditions. The fact relied upon almost entirely as establishing an election is the collection and receipt by him of the rent of the Fourth street property, and the deposit of such rents in his personal account in the First National Bank. He never otherwise used such rents and at all times had to his credit in such personal account subject to any proper disbursements, much more than the aggregate amounts of rents received. The fact that such rents were deposited in his individual account instead of his account as executor, although he receipted for such rents as executor is immaterial, because as executor he had no technical right to the rent and such rents were in no event proper items in his account as executor. It is not an uncommon practice for administrators and especially executors, in the interest of the preservation of the estate, to collect rents and constitute themselves as agents of the heirs, devisees or other persons, especially if numerous or doubtful, until some other provision is made for such collection. Frequently, unless objection is made or the question becomes material in the adjustment of the accounts of a defaulting executor or administrator, or in the settlement of other complications, such rents and other disbursements are permitted to be included in the executor's or administrator's account. If Mr. McCall had not collected these rents, to whom would the tenant have paid them. If Mr. McCall had elected

not to take under the will, the estate in remainder created by the will would not have been accelerated to the prejudice of disappointed devisees or legatees. Mr. McCall at any time by an action for dower could have fixed his rights to receive one-third of such rents, and the other two-thirds would have been duly appropriated in time for the benefit of the legatees or devisees, disappointed by his election not to take under the will or failure to elect. Ordinarily it is good business policy for some responsible person to collect rents as they accrue in order that they may be on hand for distribution when it is ascertained to whom they should be paid. If there were other facts tending to show a fixed purpose in the mind of Mr. McCall to take under the will or create an estoppel as against his claim for dower and distributive rights, then the collection of the rents by him might have added to the probative force of such facts. It must be assumed until clearly shown to the contrary that Mr. McCall had no fixed purpose or intention, or at least that he was vacillating or hesitating in his intention, because the law contemplates such to be the case until an election is irrevocably made or required. The mere receipt of such rents without such a disposition thereof as to affect the rights of others in an accounting therefor, or any other act inconsistent with the retention of the right to elect, is not under the circumstances, a fact of such unequivocal nature as to establish an irrevocable intention to take under the will, nor estop him from claiming that he had not so elected. In the case of *Millikin* v. *Welliver*, the wife was not executor, nor nominated in the will as such, yet she took possession of all the personal property, but such fact was not held sufficient to constitute an election to take such property under the will. In *Hawkins* v. *Barrow*, the widow took possession of all the property real and personal and had even orally agreed to convey an interest in the real estate, which she could only consummate by taking under the will, yet the court found that the evidence as to election was unsatisfactory.

It is claimed that even if such receipt of rents in itself be not sufficient evidence to establish an election, nevertheless such fact in connection with all the other facts in the case is sufficient. The case presents other facts consistent with an election to take,

but not inconsistent with an election not to take under the will. Mere precedent is not a reliable guide as to the probative force of any one of an involved set of facts, unless such fact is sufficient in itself. In this case, therefore, there is not a single fact, nor all the facts taken together, of such marked character or of such long duration as to clearly and distinctly evince a purpose to take under the will, nor to operate as an equitable bar to dower and distributive right. Up to the time of his death, there seems to have been no doubt in the mind of his counsel or anyone interested in the estate as to the continued existence of his right to elect.

There was therefore no election actual, implied or constructive to take under the will, and an election being necessary to take, the case does not come within the provisions of *Baxter* v. *Bowyer*, nor *Hawkins* v. *Barrow*, where the question of an election would not be a determining factor. It must be held, therefore, in accordance with the case of *Millikin* v. *Welliver*, that Mr. McCall retained his dower and distributive rights.